**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWANNA DAVIS, | ) Case No.: 1:12-cv-00320-AWI-JLT |
| Plaintiff, | )<br>) FINDINGS AND RECOMMENDATIONS |
| | ) AFFIRMING THE ADMINISTRATIVE |
| v. | ) DECISION AND DIRECTING ENTRY OF |
| | ) JUDGMENT IN FAVOR OF DEFENDANT |
| MICHAEL J. ASTRUE, | ) MICHAEL J. ASTRUE, COMMISSIONER OF |
| Commissioner of Social Security, | ) SOCIAL SECURITY, AND AGAINST |
| | ) PLAINTIFF LAWANNA DAVIS |
| Defendant. | ) |
| | ) |

Lawanna Davis ("Plaintiff") asserts she is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred evaluating of the medical evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court recommends the administrative decision be **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on January 22, 2009, alleging disability beginning September 28, 2008. (Doc. 13-3 at 11). The Social Security Administration denied her claims initially and upon reconsideration. *Id*. After requesting a hearing, Plaintiff testified before an ALJ on December 16, 2010. *Id*. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on January 24, 2011. *Id.* at 11-

1    22.  Plaintiff requested review by the Appeals Council of Social Security, which found no reason to

2    review the ALJ's decision on December 29, 2011.  *Id.* at 2-7.  Therefore, the ALJ's determination

3    became the decision of the Commissioner of Social Security ("Commissioner").

4           Plaintiff initiated this action on March 1, 2012, seeking review of the Commissioner's

5    decision.  (Doc. 1).  On October 18, 2012, Plaintiff filed her opening brief, asserting the ALJ erred in

6    applying the "grids" and failed to properly evaluate the medical evidence.  (Doc. 14).  Defendant

7    filed a brief in opposition on November 19, 2012.  (Doc. 15).  Under the terms of the scheduling

8    order, any reply by Plaintiff was to be filed no later than December 4, 2012.  (*See* Doc. 7-1 at 4).

9                                         **STANDARD OF REVIEW**

10          District courts have a limited scope of judicial review for disability claims after a decision by

11   the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

12   such as whether a claimant was disabled, the Court must determine whether the Commissioner's

13   decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

14   ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

15   standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

16   *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

17          Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

18   reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

19   389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

20   must be considered, because "[t]he court must consider both evidence that supports and evidence

21   that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

22                                        **DISABILITY BENEFITS**

23          To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to

24   engage in substantial gainful activity due to a medically determinable physical or mental impairment

25   that has lasted or can be expected to last for a continuous period of not less than 12 months.  42

26   U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

27           physical or mental impairment or impairments are of such severity that he is not only
             unable to do his previous work, but cannot, considering his age, education, and work
28           experience, engage in any other kind of substantial gainful work which exists in the

                                                      2

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529.

**A.     Relevant Medical Evidence**[1,2]

Dr. Brady Dalton completed a psychiatric review technique and mental residual functional capacity assessment of Plaintiff on March 24, 2009.  (Doc. 13-8 at 11-27).  Dr. Dalton opined Plaintiff suffered from an affective disorder, an anxiety-related disorder, and major depression.  *Id.*

---

[1] Plaintiff failed to provide "a summary of all relevant medical evidence including an explanation of the significance of clinical and laboratory findings" as instructed in the Court's order dated March 2, 2012.  (Doc. 7-1 at 3). Significantly, Plaintiff was informed that an opening brief failing to comply with the requirements set forth by the Court will be stricken.  *Id.* at 4. In the interest of judicial economy, the Court will not strike the opening brief.  **However, counsel is reminded of the obligation to comply with the orders of the Court, and that failure to comply may result in the imposition of sanctions pursuant to Local Rule 110.**

[2] Due to the volume of the medical evidence, the Court declines to detail the treatment notes presented in the record, and summarizes only the medical opinions, defined by the Regulations as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Nevertheless, the Court has read and considered the entirety of the notes contained in the record.

at 11, 14.  According to Dr. Dalton, Plaintiff had "mild" restrictions in her activities of daily living. *Id.* at 21.  In addition, he indicated Plaintiff had "moderate" limitations in maintaining social functioning as well as concentration, persistence, or pace.  *Id.*  Dr. Dalton noted a consultative examiner determined Plaintiff was "able to understand, remember and carry out three and four step job instructions."  *Id.* at 23.    Dr. Dalton indicated Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration; to perform activities within a schedule, maintain attendance, and be punctual with customary tolerances; to complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; to respond appropriately to changes in the work setting; and to interact appropriately with the general public.  (Doc. 13-8 at 25-26).  He found Plaintiff was "not significantly limited" in all other areas of understanding, memory, concentration, social interaction and adaptation.  *Id.*  Specifically, Dr. Dalton explained:

> A- Understanding and Memory:
> Data suggests that the [Plaintiff] is able to remember basic workplace locations and procedures.  Available data suggests that the [Plaintiff] is able to remember and understand simple instructions.  She appears to have a fair ability to remember more detailed instructions.
>
> B- Sustained Attention and Task Persistence:
> Available data suggests that the [Plaintiff] is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions.  [Plaintiff] appears to have a fair ability to sustain attention throughout extended periods of time (up to 2 hours at a time).  [Plaintiff] appears to have a fair ability to perform at a consistent pace particularly if she is engaged in a simple, repetitive task.  She appears to have an adequate ability to maintain a[] regular schedule.
>
> C- Social Interaction:
> Available data suggests that the [Plaintiff] has a fair ability [to] interact appropriately with the general public, co-workers and supervisors.  Data suggest that the [Plaintiff] is able to maintain personal hygiene/ standards of dress.
>
> D- Adaptation:
> Available data suggests that the [Plaintiff] has a fair ability to respond to basic work setting changes.  She appears to have a good ability to take appropriate precautions in hazardous situations and utilize transportation.  [Plaintiff] likely has a fair ability to organize herself and independently set goals.

1  (Doc. 13-8 at 27).  Dr. Dalton concluded the medical record "does not yield evidence of functional

2  limitations so severe as to preclude [Plaintiff] from all work related activities."  *Id.* at 23.

3      On April 8, 2009, Dr. Rustom Damania reviewed Plaintiff's medical records and conducted a

4  consultative examination.  (Doc. 13-8 at 29-34).  Plaintiff reported she suffered from diverticulosis,

5  which caused abdominal cramps and diarrhea; sharp, degenerative joint disease; chronic obstructive

6  pulmonary disease; and pain in her back, chest, and right knee.  *Id.* at 29.  Dr. Damania observed she

7  "was alert, cooperative and well-oriented," and did not appear to be in distress.  *Id.* at 30.  Plaintiff's

8  range of motion was within normal limits in her neck, shoulders, elbows, wrists, legs, and ankles.

9  *Id.* at 32-33.  Further, Dr. Damania determined Plaintiff's strength was "5/5 in all extremities."  *Id.* at

10  33.  Based upon the examination, Dr. Damania concluded Plaintiff "should be able to lift and carry

11  20 pounds occasionally and 10 pounds frequently."  *Id.* at 34.  In addition, Dr. Damania opined

12  Plaintiff could "sit six hours" and "stand and walk six hours out of an eight hour work day with

13  normal breaks."  *Id.*  Although Plaintiff arrived at the examination using a cane for knee pain, Dr.

14  Damania believed "[n]o assistive device is necessary for ambulation."  *Id.* at 33-34.

15      Dr. George Spellman completed an assessment of Plaintiff's physical residual functional

16  capacity on April 24, 2009.  (Doc. 13-8 at 35-39).  According to Dr. Spellman, Plaintiff had the

17  ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently.  *Id.* at 36.  In

18  addition, he opined Plaintiff could stand, walk, and sit about six hours in an eight-hour day.  Dr.

19  Spellman found Plaintiff had no postural, manipulative, visual, communicative, or environmental

20  limitations.  *Id.* at 36-38.  Therefore, he concluded a medium residual functional capacity was

21  appropriate.  *Id.* at 42-42.

22      On August 5, 2009, Dr. Middleton reviewed the medical record and noted Plaintiff's

23  psychological condition "appear[ed] to be stable" and that Plaintiff was "able to garden, take care of

24  grandkids and take care of her own needs."  (Doc. 13-8 at 74).  Therefore, Dr. Middleton affirmed

25  the assessment of Dr. Dalton.  *Id.*

26      Dr. Kamlesh Sandhu, Plaintiff's treating physician, completed assessments of Plaintiff's

27  mental impairments on October 26, 2009.  (Doc. 13-9 at 2-6).  Dr. Sandhu opined Plaintiff had an

28  affective disorder and an anxiety-related disorder, which included symptoms such as loss of interest

1    in activities, decreased energy, difficulty concentrating, and generalized anxiety accompanied by

2    autonomic hyperactivity. *Id.* at 2-3.  Dr. Sandhu believed Plaintiff's symptoms had improved with

3    medication changes made in August 2009. *Id.* at 2, 6.  In addition, Dr. Sandhu opined that, "aside

4    from intermittent problems with focus due to anxiety," limitations with activities of daily living;

5    social functioning; and maintaining concentration, persistence, or pace were not applicable. *Id.* at 4.

6    Dr. Sandhu noted she was "unable to assess" Plaintiff's ability to understand, remember, and carry

7    out job instructions. *Id.* at 6.  Further, Dr. Sandhu noted it was "difficult to clearly state" whether

8    Plaintiff was able to maintain concentration and attention for at least two hour increments because

9    she had not tested Plaintiff, but "difficulty may exist given [her] anxiety." *Id.*

10          Dr. Sandhu completed a second assessment on December 20, 2010.  (Doc. 13-14 at 17-23).

11   Dr. Sandhu opined Plaintiff had an affective disorder characterized by depression, loss of interest,

12   appetite disturbance, sleep disturbance, decreased energy, and difficulty concentrating or thinking.

13   *Id.* at 17.  Dr. Sandhu indicated Plaintiff had "moderate" restrictions with her activities of daily

14   living, and maintaining social functioning. *Id.* at 18, 22.  In addition, Dr. Sandhu opined Plaintiff

15   had "mild" difficulties in maintaining concentration, persistence, or pace. *Id.*  Although Dr. Sandhu

16   was "unable to assess" Plaintiff's ability to understand, remember, and carry out job instructions, she

17   believed it was "likely difficulty at this time given poor concentration." *Id.* at 20.

18   **B.      Hearing Testimony**

19          1.      Plaintiff's Testimony

20          Plaintiff testified at the hearing before the ALJ on December 16, 2010.  (Doc. 13-3 at 29).

21   She reported she was a high school graduate and did limited vocational training. *Id.* at 34.  Plaintiff

22   said she worked at a sprinkler company for fifteen years. *Id.*  Plaintiff stated she was a supervisor

23   for 10 years," and the job required her to "carry up to 50 pounds at a time." *Id.*  Plaintiff reported

24   that she became unable to work on September 28, 2008, and since then she had not worked for pay

25   or as a volunteer. *Id.* at 34-35.

26          According to Plaintiff, she was unable to work due to "degenerative back disease," a bad

27   memory, diverticulitis, carpal tunnel in her hands, arthritis in her knees, and spurs/ arthritis in her

28   back. *Id.* at 35.  She explained that her medication relieved the symptoms "to a point but not

1  completely." *Id.* at 41. Plaintiff explained that the "degenerative back disease and arthritis" caused

2  her to "use a TENS unit and a cane" when needed, and that the pain was "really bad in the winter."

3  *Id.* at 35.  The ALJ noted Plaintiff did not bring a cane to the hearing, and she explained that she

4  "totally forgot" it. *Id.*  Plaintiff reported she had physical therapy for her back, but was not doing it

5  any longer. *Id.* at 36.  In addition, she said her doctors had "not yet" recommended surgery. *Id.*

6       She testified that she recently lost her insurance and had to pay cash for her medication.

7  (Doc. 13-3 at 36).  Consequently, Plaintiff said she last saw Dr. Nahim, who had treated her "for the

8  last seven years," about three months prior to the hearing. *Id.*  Plaintiff reported Dr. Nahim

9  prescribed medication, sent her to physical therapy and to pain management, and recommended

10  treatment a psychiatrist, Dr. Sandhu. *Id.* at 37.

11       Plaintiff said she saw Dr. Sandu "every three months," for thirty minutes each visit. (Doc.

12  13-3 at 37-38).  She testified that Dr. Sandu arranged for her to see a counselor between visits, and

13  placed Plaintiff in an "outpatient class for depression." *Id.* at 38.  Plaintiff explained that in the

14  outpatient class, she participated in a group meeting, followed by activity time and quiet time, and

15  the session concluded with another group meeting. *Id.*

16       She said that she was able to dress herself, "do some cooking" and perform other household

17  chores but never finished the chores. (Doc. 13-3 at 42, 47).  She said she spent a couple of hours

18  each day playing with her grandchildren. *Id.* at 44.  As an example, Plaintiff said the morning of the

19  hearing she sat on the floor with her granddaughter and taught her to shoot marbles. *Id.*

20       Plaintiff estimated she was able to stand for "[m]aybe 20 minutes" at a time, but believed she

21  would have to "[s]tand up, sit down, stand up, sit down . . . in a 20 minute period." (Doc. 13-3 at

22  38).  She believed she was able to sit "[p]robably 15 minutes" in an eight-hour day. *Id.* at 39.  She

23  explained the most comfortable position was "laying on [her]back." *Id.* at 45.  Plaintiff stated she

24  could lift twenty pounds occasionally and ten pounds frequently, although carpal tunnel syndrome

25  made it difficult to open cans and hold a coffee cup. *Id.* at 40.  Plaintiff reported she was unable to

26  bend, stoop, or squat due to her back pain. *Id.*

27       In addition, she testified she had problems with her memory and concentration. (Doc. 13-3 at

28  41, 44).  As an example, Plaintiff reported she made a pot of chicken noodle soup, but did not

1    remember making it.  *Id.*  Also, she pointed out that she forgot to bring her TENS unit and cane to

2    the hearing.  *Id.*  She said sometimes she could not remember whether she took medication and had

3    to be reminded by her daughters.  *Id.* at 41, 47.  Further, she said she could not focus to read.  *Id.* at

4    44.

5               2.       Third Party Witness Testimony

6               Shawna Davis, Plaintiff's daughter, testified also.  (Doc. 13-3 at 47).  Ms. Davis reported she

7    had lived on her mother's property for nearly six years, but not in the same house.  *Id.* at 48.  She

8    stated that she saw her mother every day, and spent most of the day with her.  *Id.*  As a result, Ms.

9    Davis said she had observed Plaintiff's medical problems: "I've seen her tremors.  I see her memory

10   problems, her mood swings, emotional."  *Id.*  Ms. Davis said she knew her mother was in pain

11   because she talked about it and groaned or moaned when she moved.  *Id.*  Further, she said she saw

12   her "rubbing with Bengay" and using the TENS unit.  *Id.* at 48-49.

13              When asked to give an example about Plaintiff's memory problems, Ms. Davis noted

14   Plaintiff made some soup, and when asked about leftovers two days later, Plaintiff "could not

15   remember at all making the chicken soup, and she got all freaked out and worried about it and didn't

16   understand why she couldn't remember . . ."  (Doc. 13-3 at 49).  Ms. Davis said Plaintiff also forgot

17   "little stuff like . . . where she placed something."  *Id.*  Further, Ms. Davis said Plaintiff would

18   "sometimes . . . forget if she took her medicine or not," and she "forgets conversations."  *Id.*

19              3.       Vocational Expert Testimony

20              Vocational expert Cheryl Chandler ("VE") testified at the hearing after reviewing the record

21   related to Plaintiff's work history.  (Doc. 13-3 at 51-52).  After Plaintiff clarified that she was a

22   "working supervisor" and the work was "production" rather than bench assembly, the VE classified

23   Plaintiff's past relevant work as "[a]ssembly production line," *DOT* [3]417.684-010.  *Id.*  The VE

24   explained the *DOT* identified this work as light, but it was heavy work as performed by Plaintiff.  *Id.*

25

26

27              [3] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training
     Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national

28   economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill
     requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1    The ALJ asked the VE to consider hypothetical individuals "with the same . . . age, education

2  and previous work experience as the claimant." (Doc. 13-3 at 53).  First, the ALJ asked the VE to

3  consider an individual with physical limitations set forth by Dr. Damania.  *Id.*  Specifically, the VE

4  considered an individual who was "able to lift and carry 20 pounds occasionally and 10 pounds

5  frequently," "stand and walk six hours in an eight hour day with normal breaks," and "sit for six

6  hours."  *Id.*  Further, the individual did not require an assistive device for ambulation, and had no

7  postural, manipulative, or communicative impairments. *Id.*  The VE opined such an individual had

8  the capacity to perform a full range of light work.  *Id.* Examples identified by the VE included

9  cashier, *DOT* 211.462-010, and rental clerk, *DOT* 295.367-026.  *Id.* at 59.

10    Next, the ALJ added mental limitations to the hypothetical.  (Doc. 13-3 at 53).  The ALJ

11  specified the individual could "remember basic workplace locations and procedures," "remember

12  and understand simple instructions," "carry out simple instructions, follow simple work like

13  procedures, make simple work related decisions."  *Id.*  In addition, the worker had a "fair ability" to

14  remember detailed instructions; sustain attention for up to two hours at a time; perform at a

15  consistent pace; "interact appropriately with the general public, co-workers and supervisors;" and to

16  respond to basic work changes.  *Id.* at 53-54.  The ALJ explained that the word "fair" meant "there's

17  some limitation but the activity is not precluded."  *Id.* at 54.   The VE opined such a person could not

18  perform Plaintiff's past relevant work because the mental factors precluded work above the unskilled

19  level.  *Id.* at 55.  However, the VE opined such a person had the ability to perform the full range of

20  unskilled, light work.  *Id.*

21    Plaintiff's counsel questioned the VE and asked her to add "a sit stand option" to the physical

22  limitations set forth by the ALJ.  (Doc. 13-3 at 57-58).  The VE explained that this would affect the

23  number of jobs available, and there would be a "significantly reduced amount of light . . . and

24  sedentary" work available.  *Id.* at 58.  The VE explained the cashier position would be reduced from

25  116,000 positions to 11,000 in the state of California, and the rental clerk position would be reduced

26  to 1,400.  *Id.*

27  ///

28  ///

9

1   **C.      The ALJ's Findings**

2         Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

3   gainful activity since the alleged onset date of September 28, 2008.  (Doc. 13-3 at 13).  Second, the

4   ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical

5   spine, osteoarthritis involving both knees, chronic obstructive pulmonary disease and anxiety.  *Id.*

6   These impairments did not meet or medically equal a Listing.  *Id.* at 14.  Next, the ALJ determined:

7         [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds
      occasionally and 10 pounds frequently, sit stand and/or walk 6 hours in an 8-hour

8         workday (20 CFR 404.1567(b)).  She can remember basic workplace locations and
      procedures, can remember and understand simple instructions and has a fair ability to

9         remember more detailed instructions.  She can carry out simple instructions, follow
      simple work-like procedures, and make simple work related decisions.  She has a fair

10        ability to sustain attention throughout extended periods of time (up to 2 hours at a
      time) and to perform at a consistent pace, particularly if engaged in a simple,

11        repetitive task.  She has adequate ability to maintain a regular schedule.  She has a
      fair ability to interact appropriately with the general public, co-workers and

12        supervisors, and a fair ability to respond to basic work setting changes.  She also has
      good ability to take appropriate precautions in hazardous situations and to utilize

13        transportation.  She has a fair ability to organize herself and independently set goals.

14

15  *Id.* at 16.  With this RFC, Plaintiff was unable to perform past relevant work.  *Id.* at 21.  However,

16  the ALJ determined "there were jobs that exist in significant numbers in the national economy that

17  the claimant can perform."  *Id.*  Therefore, the ALJ concluded Plaintiff was not disabled as defined

18  by the Social Security Act.  *Id.* at 22.

19  **DISCUSSION AND ANALYSIS**

20  **A.      Additional evidence submitted to the Appeals Council is not relevant.**

21        Plaintiff submitted additional evidence to the Appeals Council, which included treatment

22  notes from Community Behavioral Health Center.  (Doc. 13-14 at 24-29).  Plaintiff argues this

23  evidence should be considered by the Court in its review.  (Doc. 14 at 6).  Notably, the Appeals

24  Council incorporated the treatment notes into the record, "but concluded that this additional evidence

25  does not provide a basis for changing the Administrative Law Judge's decision."  (Doc. 13-3 at 3).

26  When the Appeals Council considers evidence provided by a claimant after the ALJ's decision has

27  been issued, the Court reviews both the ALJ's decision and additional material submitted to the

28  Appeals Council. *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

10

1    The Regulations provide: "In reviewing decisions based on an application for benefits, if new

2    and material evidence is submitted, the Appeals Council shall consider the additional evidence *only*

3    where it relates to the period *on or before* the date of the administrative law judge hearing decision."

4    20 C.F.R. §§ 404.970(b) (emphasis added).  Evidence is material if it is "relevant to the claimant's

5    condition for the time period for which benefits were denied."  *Bergmann v. Apfel*, 207 F.3d 1065,

6    1069-70 (8th Cir. 2000) (evidence must not merely detail after-acquired conditions or post-decision

7    deterioration of a pre-existing condition); *Gamer v. Secretary of Health & Human Services*, 815 F.2d

8    1275, 1280 (9th Cir. 1987).   Accordingly, to be material evidence, the treatment notes must relate to

9    Plaintiff's condition prior to January 24, 2011.  *See id.*

10    The treatment notes from Community Behavioral Health Center demonstrate Plaintiff was

11    hospitalized involuntarily for 72 hours as a danger to herself beginning February 23, 2011.  (Doc.

12    13-14 at 27).  Plaintiff was discharged from the facility on February 27, 2011.  *Id.* at 25.  Plaintiff

13    does not show that these treatment records relate to her condition as it was on or before the ALJ's

14    decision issued, or demonstrate that this evidence discusses impairments from which she suffered

15    prior to January 24, 2011.  Thus, the treatment notes presented to the Appeals Council are neither

16    material evidence nor relevant to the Court's review.

17    **B.      The ALJ set forth specific, legitimate reasons supported by substantial evidence in the**

18    **record for giving less weight to the opinion of Dr. Sandhu.**

19    In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating

20    physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

21    examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821,

22    830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in

23    disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

24    the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*,

25    881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight

26    than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).  Thus, the courts apply

27    a hierarchy of the weight afforded to the opinions offered by physicians.

28    The opinion of a treating physician may be rejected whether it is contradicted by another.

1    *Magallanes*, 881 F.2d at 751.  An ALJ may reject the contradicted opinion of a physician with

2    "specific and legitimate" reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at

3    830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting

4    medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v.*

5    *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by

6    the Court when there is "more than one rational interpretation of the evidence."  *Id.*; *see also Matney*

7    *v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must

8    resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not

9    substitute its judgment for that of the ALJ").

10              1.       Reasons set forth by the ALJ for giving less weight to the opinion of Dr. Sandhu

11           Plaintiff asserts the ALJ set forth "insufficient reasons" to reject the opinion of her treating

12    physician, Dr. Sandhu.  (Doc. 14 at 5).  According to Plaintiff, "As the only treating mental health

13    physician of record, with a longitudinal effort to cure, and with a supportive team, Dr. Sandhu's

14    opinions had the greatest weight of any opinions of record."  *Id.* (citing 20 CFR § 404.1527 (c)).

15    Plaintiff contends the treatment notes from Dr. Sandhu "contained all of the physical and mental

16    findings, medication prescription history, and notes of other team members at Kaiser over a span of

17    more than 3 years."  *Id.* at 6.  On the other hand, Defendant argues the ALJ gave numerous and

18    "reasonable reasons to reject Dr. Sandhu's opinion."  (Doc. 15 at 10, 12).

19           The ALJ explained he gave less weight to the assessments of Dr. Sandhu because they were

20    not consistent with Plaintiff's daily activities, were inconsistent with one another, and not supported

21    by the treatment notes.  (Doc. 13-3 at 19).  In addition, the ALJ noted Dr. Sandhu's opinion

22    "impinge[d] on an issue reserved to the Commissioner."  *Id.*  The Ninth Circuit has determined that

23    these are specific, legitimate reasons for giving less weight to the opinion of a treating physician.

24              a.       *Plaintiff's activities*

25           The opinion of a physician may be discounted where it is inconsistent with a claimant's level

26    of activity.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  The ALJ observed Plaintiff

27    "visit[ed] with her grandchildren daily."  (Doc. 13-3 at 18).  In addition, he noted Plaintiff had

28    "extensive daily activities, including caring for her husband, washing clothes, feeding dogs, and

1   washing dishes." (Doc. 13-3 at 19). The ALJ determined these activities were inconsistent with Dr.

2   Sandhu's opinion that Plaintiff was "moderately limited in both activities of daily living and

3   maintaining social functioning." *Id.* Accordingly, this was a specific, legitimate reason for giving

4   less weight to the opinion of Dr. Sandhu. *See Rollins*, 261 F.3d at 856 (where the treating physician

5   set forth restrictions that "appear to be inconsistent with the level of activity that [the claimant]

6   engaged in," the ALJ set forth an adequate reason for giving the physician's opinion less weight)

7               *b.        Inconsistencies*

8           An opinion may be rejected where there is incongruity between a treating doctor's

9   assessment and the medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

10  Further, medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson*

11  *v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).

12          Here, the ALJ found the opinions of Dr. Sandhu were inconsistent with evidence contained in

13  her treatment notes. (Doc. 13-3 at 19). For example, the ALJ cited treatment notes dated August 14,

14  2009, in which Dr. Sandhu observed Plaintiff was "alert and oriented," her concentration and

15  attention "appear[ed] intact" and her thoughts were "linear, logical and goal directed." (Doc. 13-3 at

16  19, citing Doc. 13-9 at 27). Further, the ALJ referenced treatment notes dated September 2, 2009, in

17  which Plaintiff reported to Dr. Sandhu that she had "increased energy, motivation." (Doc. 13-9 at

18  15). On October 1, 2009, Dr. Sandhu opined Plaintiff was "showing improvement in her overall

19  mood." *Id.* at 10. The ALJ determined that these notes, demonstrating "relatively unremarkable

20  findings," were inconsistent with the statements of Dr. Sandhu.[4] (Doc. 13-9 at 19).

21               *c.        Issue reserved for the Commissioner*

22          The determination of whether a claimant is disabled is reserved for the Commissioner, and

23  statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical

24  opinions." 20 C.F.R. § 404.1527(e). Recently, this Court explained that "an ALJ is not obligated to

25  _____

26  [4] Moreover, given Dr. Sandhu was "unable to assess" Plaintiff's ability "to understand, remember, and carry out job
    instructions," "to deal with the public," "to relate and interact with supervisors and co-workers," "to deal with the
27  public" and "to handle funds," and he offered that her ability "to maintain concentration and attention for at least two
    hour increments," and "to withstand the stress and pressures associated with an eight-hour work day and day-to-day
28  work activity," were "difficult to state," and she was unable to comment on "the expected duration and prognosis of
    Plaintiff's impairment" and Dr. Sandhu's opinions were of limited worth.  Doc. 13-14 at 20.

1   provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of

2   disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012)

3   (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)).  Dr. Sandhu's belief that Plaintiff was

4   "not able to find another job and work effectively" between September 3, 2008 and August 14, 2009

5   is a statement "that would direct the determination or decision of disability."  *See* 20 C.F.R. §

6   404.1527(e).  Accordingly, it is an issue reserved for the Commissioner, and the ALJ's rejection of

7   Dr. Sandhu's statement that was proper.

8           2.      Substantial evidence supports the ALJ's evaluation

9           Significantly, "[a]lthough the contrary opinion of a non-examining medical expert does not

10  alone constitute a specific, legitimate reason for rejecting a treating or examining physician's

11  opinion, it may constitute substantial evidence when it is consistent with other independent evidence

12  in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

13          Dr. Dalton opined Plaintiff had the ability "to remember and understand simple instructions,"

14  and to "carry out simple instructions." (Doc. 13-8 at 27).  Likewise, Dr. Middleton affirmed the

15  finding that Plaintiff was able to perform simple repetitive tasks.  *Id.* at 74.  These decisions are

16  consistent with the findings of Dr. Damania that Plaintiff was "able to understand, carry out, and

17  remember three-and four-step job instructions in a work like setting." *Id.* at 10.  Accordingly, the

18  opinions of Dr. Dalton and Dr. Middleton are substantial evidence in support of the ALJ's decision

19  to give less weight to the opinion of Dr. Sandhu.

20  **C.      Testimony from the vocational expert supports the ALJ's disability determination.**

21          Plaintiff argues, "Assuming the accuracy of the evidence the ALJ relied upon and even the

22  accuracy of the RFC, the grids[5] could not apply to resolve this case." (Doc. 14 at 3).  Plaintiff

23  contends she suffers from "a host of non-exertional impairments not contemplated by the grids." *Id.*

24  at 4. The Ninth Circuit explained, "when a claimant has both exertional [strength-related] and

25  nonexertional limitations . . . , the grids are inapplicable and the ALJ must take the testimony of a

26  VE." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).  Here, the ALJ determined Plaintiff's

27

28          [5] The Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2, are commonly
known as "the grids". *See, e.g., Bragdon v. Astrue,* 2010 U.S. Dist. LEXIS 31086, at *22 (E.D. Cal. Mar. 31, 2010).

1    anxiety constituted a severe impairment.  (Doc. 13-3 at 13).  Accordingly, the ALJ included non-

2    exertional limitations in the RFC, and, rightly, relied upon the testimony of the VE rather than the

3    grids.

4         Significantly, the ALJ relied upon this testimony "[t]o determine the extent to which

5    [Plaintiff's] mental RFC . . . erodes the unskilled light occupational basis."  (Doc. 13-3 at 22).  This

6    is consistent with Social Security Ruling ("SSR") 83-12, which requires an adjudicator to consult a

7    vocational resource when "the extent of erosion of the occupational base is not clear."  *Id.*   An ALJ

8    may call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would

9    be able to do; and (2) the availability of such jobs in the national economy."  *Tackett v. Apfel*, 180

10   F.3d 1094, 1101 (9th Cir. 1999).

11        The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the

12   claimant's impairments' for the vocational expert's consideration" when eliciting testimony.

13   *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275,

14   1279 (9th Cir. 1987)).  The description of impairments "must be accurate, detailed, and supported by

15   the medical record."  *Id.*  Only limitations supported by substantial evidence must be included in the

16   question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock v. Apfel,* 240

17   F.3d 1157, 1163-65 (9th Cir. 2001). "If the assumptions in the hypothetical are not supported by the

18   record, the opinion of the vocational expert that the claimant has a residual working capacity has no

19   evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

20        1.    The ALJ did not err in defining the word "fair" for the vocational expert.

21        Plaintiff contends the ALJ erred in explaining the word "fair" to mean "there's some

22   limitation, but the activity is not precluded" when asking the vocational expert to consider

23   limitations set forth by Dr. Dalton.  (Doc. 14 at 4, quoting Doc. 13-3 at 54).  Plaintiff argues "the

24   definition of 'fair' used by the ALJ was overbroad, including every degree of limitation from some

25   limitation all the way up to preclusion," and Dr. Dalton did not provide this definition.  *Id.* at 4.

26        Courts have examined the definition of the word "fair," and found it does not indicate an

27   activity is precluded.  The Eighth Circuit explained:

28

15

1

2

> The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

3

4

5 *Cantrell v. Apfel*, 231 F.3d 1104, 1107-08 (8th Cir. 2000). The definition set forth in *Cantrell* was

6 adopted by the Sixth Circuit in *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) and has been

7 cited with favor by this District in *Esquivel v. Astrue*, 2010 U.S. Dist. LEXIS 12775 at *20-21 (E.D.

8 Cal. Jan. 26, 2010). Here, Dr. Dalton explained he did not believe the record yielded "evidence of

9 functional limitations so severe as to prelude [Plaintiff] from all work related activities." (Doc. 13-8

10 at 23). Consequently, the use of the word "fair" by Dr. Dalton favors functional ability, and the ALJ

11 did not err in using the word "fair" in setting forth limitations for consideration by the vocational

12 expert.

13     2.     The hypothetical posed to the VE was supported by the record.

14 Plaintiff contends the ALJ posed an improper hypothetical question to the vocational expert.[6]

15 (Doc. 14 at 4). Plaintiff notes Dr. Dalton found Plaintiff was "moderately limited" in her "ability to

16 perform activities within a schedule, maintain regular attendance and be punctual within[] customary

17 tolerances." *Id.* (citing Doc. 13-8 at 25). According to Plaintiff, "The ALJ left this limitation out of

18 the hypothetical question and the RFC, leaving those incomplete." *Id.* (citing *Lingenfelter v. Astrue*,

19 504 F.3d 1028, 1040-41 (9th Cir. 2007)).

20 At the administrative hearing, after the vocational expert considered physical limitations, the

21 ALJ added mental limitations. (*See* Doc. 13-3 at 53-54). The ALJ specified the hypothetical worker

22 had the ability to understand, remember, and carry out simple instructions; and a "fair ability to

23 remember more detailed instructions." *Id.* at 53. Notably, these limitations were based upon the

24 functional capacity assessment provided by Dr. Dalton, in which he explained Plaintiff had "an

25

26

27 [6] Plaintiff failed to provide a summary of the hearing testimony provided by the vocational expert. Although Plaintiff asserted the relevant testimony would be "discussed in the context of the arguments," this is insufficient to comply with the terms of the Court's order to provide "a summary of the relevant testimony at the administrative

28 hearing." (*See* Doc. 7-1 at 3). In future, the Court will strike briefs which, as here, blithely disregard the Court;s orders and counsel's duty to provide a comprehensive outline of the relevant testimony.

1    adequate ability to maintain a[] regular schedule." (Doc. 13-8 at 27).  Because Dr. Dalton believed

2    Plaintiff could perform simple, repetitive tasks and was not precluded from work-related activities,

3    the hypothetical question posed to the vocational expert was supported by the medical record.

4    Therefore, the ALJ did not err in setting forth limitations for the vocational expert's consideration.

5    *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987) (the ALJ's findings will be upheld by the

6    Court when the "weight of the medical evidence supports the hypothetical questions posed by the

7    ALJ").

8                                **FINDINGS AND RECOMMENDATIONS**

9           Based upon the foregoing, the ALJ did not err in his evaluation of the medical evidence, and

10   substantial evidence in the record supports the RFC determination and hypothetical question posed

11   to the vocational expert.  Because the ALJ applied the proper legal standards and his findings are

12   supported by substantial evidence in the record, his determination that Plaintiff was not disabled

13   prior to the date last insured must be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

14          Accordingly, **IT IS HEREBY RECOMMENDED**:

15          1.      The decision of the Commissioner of Social Security be **AFFIRMED**; and

16          2.      The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Michael

17                  J. Astrue, Commissioner of Social Security, and against Plaintiff Lawanna Davis.

18          These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the

20   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

21   fourteen days after being served with these findings and recommendations, any party may file

22   written objections with the Court and serve a copy on all parties.  Such a document should be

23   captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

24   Objections shall be filed and served within fourteen days of the date of service of the Objections.

25   ///

26   ///

27   ///

28

1        The parties are advised that failure to file objections within the specified time may waive the

2    right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4    IT IS SO ORDERED.

5       Dated:   **December 12, 2012**          **/s/ Jennifer L. Thurston**

6                                                   UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28